UNITED STATES OF AMERICA

IN THE DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

MARCIA M. AVIS, an individual and
GERALDINE M. FOSNAUGH, an individual,

      Plaintiffs,

      v.                                      Case No.
                                          Hon.

DHAFIR DALALY, an individual,
FIRST INTERNATIONAL EXCHANGE CORP., INC.,
a Michigan corporation, and FIRST INTERNATIONAL
EXCHANGE GROUP, INC., a Michigan Corporation,

      Defendants,

_____/

## COMPLAINT

## GENERAL ALLEGATIONS

1. This action is brought to recover damages to Plaintiffs resulting from the illegal and

   fraudulent actions of the Defendants in engaging in a scheme to defraud Plaintiffs

   and others by claiming to operate a legitimate banking and surety bond business

   from at least 2004 forward, when actually, Defendants were in charge of an

   enterprise that, engaged (partially through the use of the U.S. Mails and interstate

   wires), in a scheme  to defraud by obtaining money and property through means of

   false and fraudulent pretenses, representations, and promises, by defrauding persons

   out of fees, money and property in exchange for supplying worthless banking

1

services and defrauding people out of the value of court judgments by issuing

phony court surety bonds. In addition, part of the scheme to defraud Plaintiffs and

others  consisted of defrauding them out of money and property by inducing them

through means of false and fraudulent pretenses, representations and promises, to

engage in mortgage and real estate transactions with the members of the enterprise,

in violation of the Truth in Lending Act, by falsely and fraudulently claiming that

Defendants had large financial resources as the result of being a "private

international bank," when these mortgage and real estate transactions were actually

designed to cheat Plaintiffs and others out of their money and personal and real

property.

2. From at least 2004, Defendants have engaged in a scheme to defraud Plaintiffs and

others with the intent to obtain money and property through the means of false and

fraudulent pretenses, representations and promises, by falsely representing

themselves to Plaintiffs and the public as being involved in a legitimate private

banking business that handled billions of dollars of loans and other financing

transactions, including the issuance of bonds, mortgages and letters of credit.

Pursuant to that scheme to defraud, Defendants have consistently fraudulently

claimed that their activities are legally undertaken through the Atlantic Bank, Inc.,

which according to the false statements of Defendants is a "private international

bank" and an "Equal Housing Lender" along with the mandated equal housing

lender logo mandated by the FIDC.  In fact that Atlantic Bank, Inc., is not

authorized to conduct a banking and mortgage business in the United States and

Michigan and has no right to use the word "bank" in its name or claim it is a mortgage broker or lender.

3. From at least 2004, Defendants have engaged in a scheme to defraud by falsely claiming, with the intent to obtain money and property from Plaintiff and others, through the means of false and fraudulent pretenses, representations and promises, that Defendants are able to issue and finance letters of credit, loan commitments, mortgages and surety bonds for court actions, either by themselves or with the other members of their enterprise. In addition, Defendants, in furtherance of their scheme to defraud, have consistently falsely claimed to Plaintiffs and others that they have large monetary reserves, certainly no less than $15 million dollars and often in excess of "hundreds of millions of dollars," which were immediately available to finance loans, issue letters of credit and engage in other financial transactions, and that Defendants have consistently been involved in large financial transactions and loans throughout at least the last ten years,

4. At no time were the Defendants ever properly licensed or approved to conduct business as a bank, mortgage, surety or bonding company, either under federal or Michigan law. At no time were the Defendants ever permitted to describe the business they were operating, use in their advertising, written correspondence sent through the mails or communications over the wires, as a "bank" or claim to be a banking business. The assumption of a name that uses the word "bank" or uses a combination of words in a corporate name to indicate or convey the idea of a bank or banking activity is prohibited under Michigan law, MCL 450.1213(a), and MCL

3

487.11106. The Defendants were not approved to conduct banking business under the Michigan Banking Code of 1999, that states pursuant to MCL 487.11105(1)(A), "A person shall not engage in the business of banking in this state unless authorized by this act, the laws of another state, the national bank act, the international banking act of 1978, or if engaged in the business of banking on the effective date of this act under former 1989 PA 319."

5.   Defendants were not allowed to engage in a surety bond business without being licensed in the State of Michigan, nor were they licensed under the Michigan Consumer Financial Services Act, the Mortgage Brokers, Lenders, and Servicers Licensing Act, and the Mortgage Loan Originator Licensing Act to conduct a mortgage lending or brokerage business.

6.   The purpose of the aforementioned false  statements were for the purpose of furtherance of Defendants' scheme to defraud Plaintiffs and others by obtaining money and property through means of false and fraudulent pretenses, representations and promises, including, but not limited to, fraudulently inducing persons to  pay to Defendants large fees for the issuance of worthless letters of credit and loan commitments and to obtain an equity position in businesses and ventures and an ownership interest in property, by making false statements so that persons would rely on Defendants' purported ability to satisfy loan and surety commitments.  In addition, Defendants utilized their false statements and scheme to defraud in order to induce innocent persons to enter into transactions with them, while the innocent persons acted under the trust, reliance and belief that Defendants

4

were acting pursuant to the normal government regulations and financial requirements that applied to banks.

7.  In their aforesaid scheme to defraud, Defendants used or were assisted by several other businesses, including the Law Offices of Hamood, Runco & Fergestrom, Kensington Financial, LLC., the Sheldon Sandweiss Real Estate Trust, the Atlantic Bank, Inc., the Melanesian Business Estate and Consultant Services, (from the Country of Vanuatu), and, upon information and belief, Troy Abstract and Title Agency, Inc.

8.  Defendants' scheme as alleged in this complaint violates the Racketeer Influenced and Corrupt Organizations Act, ("RICO"), 18 USC 1961, *et seq*., the Truth in Lending Act, and State common and statutory laws, entitling the Plaintiffs to damages.

**Plaintiffs**:

9.  Plaintiff Marcia Avis is an individual who is a citizen and resident of the Eastern District of Michigan.  Plaintiff Avis was a victim of Defendants' aforesaid scheme and was fraudulently induced by Defendants to rely on representations that Defendants held funds available to finance loans and held sufficient funds immediately available to fund letters of credit issued by Defendants in 2008 during the attempts by Plaintiff Avis and her associates to purchase the North Oakland Medical Center hospital in Pontiac, Michigan, and the Detroit Riverview Hospital in Detroit, Michigan. Plaintiff Avis was also fraudulently induced to enter into real

5

estate sales and mortgages that allowed Defendants to gain possession of her real

and personal property and allowed Defendants to make fraudulent claims against

property owned by her and defraud her and Plaintiff Fosnaugh out of mortgage

proceeds.  Further, Plaintiff Avis was fraudulently induced by Defendants to sign

phony deeds which purported to transfer property to Defendant First International

Exchange Corp, Inc. without adequate consideration.

10. Plaintiff Geraldine M. Fosnaugh is an individual who is a citizen and resident of the

Eastern District of Michigan. Plaintiff Fosnaugh was a victim of Defendants'

aforesaid scheme and was fraudulently induced by Defendants to sign phony deeds

on behalf of her trust transferring property owned by her trust to herself and Marcia

Avis, her daughter, personally and then in part to Defendant First International

Exchange Corp, Inc., without consideration. In addition, Plaintiff Fosnaugh was a

victim of Defendants' illegal actions in defrauding her out of mortgage proceeds.

11. At all times relevant to the matters in this action, Plaintiffs were acting under the

belief and understanding, as induced by Defendants pursuant to the aforementioned

scheme,  that Defendants and other members of their enterprise, were at all times

engaged in legitimate banking and other financial  transactions, were regulated by

state and federal banking authorities, were properly licensed, were making truthful

statements when claiming that the transactions were the "proper and normal way to

conduct banking business"  and that Defendants actually had the funds to satisfy the

obligations they undertook.  All of those allegations made by the Defendants were

false and made pursuant to a scheme designed to defraud Plaintiffs and others by

6

obtaining money and property through means of false and fraudulent pretenses, representations and promises.

**Defendants:**

12. Defendant First International Exchange Group, Inc., is a Michigan corporation that has its offices and principal place of business in the Eastern District of Michigan. Defendant First International Exchange Group, Inc., was incorporated in 1983 in Michigan, and from that time has engaged in various banking, money lending, mortgage, surety and financial transactions, in Michigan, other U.S. states and foreign countries.

13. Defendant First International Exchange Corp., Inc., is a Michigan corporation that has it offices and principal place of business in the Eastern District of Michigan. Defendant First International Exchange Corp., Inc., was incorporated in 2004 in Michigan and from that time has engaged in various banking, money lending, mortgage, surety and financial transactions, in Michigan, other U.S. states and foreign countries.

14. Defendant First international Exchange Group, Inc., and Defendant First International Exchange Corp., Inc., are sometimes hereinafter referred together as the "First International Defendants."

15. Defendant Dhafir Dalaly is an individual who is a citizen of Michigan and resides in the Eastern District of Michigan.  From at least 2004, Defendant Dalaly acted

7

alone or in concert with others as an officer or representative of First International Exchange Group, Inc., and First International Exchange Corp., Inc., (hereinafter "the First International Defendants"), and assisted those Defendants in soliciting and conducting their banking, surety, mortgage, lending and financial transactions business, for their monetary gain as well as his.

16. In furtherance of Defendants' aforesaid scheme to defraud Plaintiffs and others by obtaining money and property through means of false and fraudulent pretenses, representations and promises, Defendants, through the use of the interstate wires via their  website, (www.atlanticbankinc.com"), a copy of which is attached hereto as Exhibit A), and their own and Defendant Dalaly's  oral and written  representations, have consistently made the following false claims, all of which are untrue when made, were known to be untrue by Defendants when made, which Defendants intended Plaintiffs and others to rely upon to their detriment, which statements were reasonable to be relied upon and were in fact were reasonably relied upon by Plaintiffs and others to their detriment:

   a.  That the Atlantic Bank, Inc., is a legitimate private international bank, having its U.S. location at the offices of Defendants in Michigan, and which has been properly approved to operate as a bank in Michigan at all times relevant to this lawsuit.

   b.  The First International Defendants have engaged in numerous domestic and international investment projects exceeding billions of dollars, and have done so continuously over the last ten to twenty years.

8

    c.   The board of directors of Defendant First International Exchange Group, Inc., was established with members of certain of Middle Eastern Royal Families, implying that the Defendant's "private banking business" has the support of foreign governments.  In addition, that the Defendants were approved by various foreign governments to conduct banking business in their countries.

    d.   The First International Defendants are a "private financial/banking institution."

    e.   The First International Defendants have over $15 million in assets to secure court surety bonds and mortgage funding.

    f.   The First International Defendants have the assets on hand to immediately fund $15 million dollars of loans.

    g.   The First International Corporations are authorized to engage in all types of financial transactions in Michigan, including bonding, leasing and mortgage lending, brokerage and placing.

**Jurisdiction**:

17.  This Court has jurisdiction under  18 USC 1962(c), (violation of RICO), 15 USC 1640,  (violation of the Truth in Lending Act, 15 USC 1601, et seq.),  Consumer Credit Transaction Act, and 28 USC 1331 and 1367.

18. This case is brought under 18 USC 1962(c), for the reason that Plaintiffs have been damaged by Defendants' unlawful conduct and participation, directly or indirectly, in the conduct of an enterprise through a pattern of racketeering activity.

9

19. The amount in controversy exceeds $10 million dollars.

**Enterprise:**

20. Defendants, the Law Offices of Hamood, Runco & Fergestrom, Kensington Financial, LLC, the Sheldon Sandweiss Real Estate Trust, the Atlantic Bank, Inc., the Melanesian Business Estate and Consultant Services, (from the Country of Vanuatu), and, upon information and belief, Troy Abstract and Title Agency, Inc., constitute an association in fact within the meaning of 18 USC 1961(4). The Enterprise operated under the name of "Affiliates of Atlantic Bank, Inc."  The members of the Enterprise shared the common purpose of supporting Defendants' fraudulent claim that the First International Defendants were a legitimate banking, mortgage, surety and bonding business and were associated with what was purported to be a legitimate bank, the Atlantic Bank, Inc.  The Enterprise operates as an organization, functioning as an ongoing and continuing unit that was created or used as a tool by Defendants in order to effectuate through the pattern of racketeering activity, as alleged in this Complaint, the common goals of financial remuneration to all participants.

21. Defendant Dalaly and the two First International Defendants are each a person distinct from the Affiliates of Atlantic Bank Enterprise.

22. The purpose of the Enterprise was to support Defendants' sham that Defendants were operating a legitimate banking business, surety, bonding and mortgage lending

business with access to large amounts of funds available to loan and back up letters of credits and bonds, to support the Defendants' fraudulent claim that the Atlantic Bank, Inc., was a legitimate bank, legally authorized to operate under Michigan and Federal laws, that Defendants were authorized to conduct a banking, surety, bonding and mortgage lending business in Michigan and that Defendants had a large amount of capital to do so.  This support was critical to the furtherance of Defendants' scheme to defraud Plaintiffs and others with the intent to obtain money and property through the means of false and fraudulent pretenses, representations and promises.  In supporting Defendants' sham that Defendants were operating a legitimate banking business, the participants in the Enterprise benefited by the receipt of the various fees and commissions that resulted from the financial transactions that took place.  In all transactions, the victims, including Plaintiffs, relied on the untrue statements of the  other members of the Enterprise and Defendants that Defendants were legally qualified to engage in banking, bonding, surety and mortgage transactions and were bound by the Federal and State laws and regulations pertaining to the banking industry,  surety and mortgage industry. Further, the victims, including Plaintiffs, relied on the untrue statements of Defendants regarding the legal effect of land contracts, deeds and mortgages, when the purpose of those statements were to defraud the victims, including Plaintiffs, out of their property.

23. Some of the specific actions undertaken by Defendants in furtherance of the Enterprise's purpose are as follows:

a.   Caused worthless surety bonds to be issued and then filed and accepted in several courts, including issuing a $5 million surety bond in 2001 in the case of *PDV Midwest Refining, et al. v. Amanda Oil Gas Co., et al,* 97-cv-72287 (E.D Michigan), a security bond in *Bailey Properties v. Beydouin*, Case No. 03-LT-1940 (46th District Court, Southfield, Michigan), and security bonds in at three other Michigan Courts. In those surety bonds or the affidavits supporting them, Defendants fraudulently alleged that the surety bonds were backed by millions of dollars in assets, when in fact the assets available to the Enterprise to support the bonds had a value of less than $25,000. At all times, Defendants  intended the Courts and parties in the court actions to rely on the  statements set forth in the bonds and the affidavits supporting the bonds, even though the statements were untrue at the time they were made.  As a result, holders of judgments have been damaged in an amount in excess of $10,000.

b.   Caused the two worthless letters of credit attached hereto as Exhibit B, to be issued.  The letters of credit were issued on May 31, 2008, and August 27, 2008, purporting to secure $15 million and $9 million lines of credit, respectively. The two letters of credit were purchased by Plaintiff Avis, Dr. Manoj Prasad and others to support a bid to purchase hospitals. When Plaintiff Avis requested that a small portion of the funds be made available as a down payment, Defendants refused. As a result of Defendants failing to honor the letters of credit and its loan commitments, as well as Defendants' untrue allegations that they were a legitimate bank, Plaintiff Avis and her associates were damaged in the amount of over $10 million because of the loss of the purchase of the hospitals.

12

c.  Continuously claimed that they had funds to be made available for Plaintiffs to draw upon, such as claiming that Defendants had placed $512,862.24 in a certificate of deposit with the Atlantic Bank, Inc., in order to induce Plaintiffs not to take possession of the Haverhill house, mention further on in this Complaint, but to rent other property instead.  Attached hereto as Exhibit C, is a letter dated January 25, 2010, by which one of the Defendant's officers, by use of the U.S. Mails, verifies that the funds would be available. In fact, Plaintiffs subsequently realized that the funds never existed or were actually at Plaintiff's disposal at any time. All of the aforementioned representations were made by Defendants contemporaneous with claims and representations that the First International Defendants had large amounts of assets and deposits, were engaged in a legitimate banking and mortgage business as an affiliate of Atlantic Bank, Inc., and that this transaction was a normal banking transaction. This action caused Plaintiffs to allow Defendants to continue in possession of property and continue in the financial relationships between Plaintiffs and Defendants, all of which caused Plaintiffs damages in an amount in excess of $75,000.

d.  Fraudulently, induced Plaintiff Fosnaugh and Avis to enter into a $150,000 mortgage on real property located at 20240 W. Twelve Mile Road, Southfield, Michigan, [hereinafter "the 12 Mile Road Property"] on May, 11, 2009, (Exhibit D), as well as an Assignment of Rents and Leases, (Exhibit E).  Immediately, on the same day, the mortgage was reassigned to the Sheldon Sandweiss Real Estate Trust via the assignment attached hereto as Exhibit F.  Plaintiffs never received all the proceeds from that mortgage, as allegedly, Defendants were holding some in

13

escrow, and shortly thereafter Defendants fraudulently claimed that they had paid

the Sheldon Sandweiss Real Estate Trust, a payment on the mortgage from the

funds allegedly held back from the mortgage process and held in the account of

the Law Offices of Hamood, Runco & Fergestrom via the check attached hereto

as Exhibit G, drawn on the law firm's bank account but signed by Defendant

Dhafir Dalaly, who is not an attorney. In addition, Defendants induced Plaintiffs

to believe that First International Defendants, had paid off the mortgage (Exhibit

D), and released the mortgage on the property, while, contemporaneously,

fraudulently purporting to agree (without ever intending to so agree), that Plaintiff

Fosnaugh and Avis could pay the First International Defendants any amounts

owed on the mortgage in the future when Plaintiffs were in better financial shape.

All of the aforementioned representations were made by Defendants

contemporaneous with claims and representations that the First International

Defendants had large amounts of assets and deposits, were engaged in a

legitimate banking and mortgage business as an affiliate of Atlantic Bank, Inc.,

and that this transaction was a normal banking transaction. In fact, Defendants did

not pay off or satisfy the mortgage, but rather, had the mortgage assigned to

Defendant First International Exchange Corp, Inc., via the assignment attached

hereto as Exhibit H, all of which caused Plaintiffs damages in an amount in

excess of $75,000.

e. Fraudulently induced Plaintiffs to sign a deed conveying one-half of the 12 Mile

Road property to Defendants via a deed, a copy of which is attached hereto as

Exhibit I, which was not to be filed, allegedly as security for the unpaid amount of

14

the aforesaid mortgage (Exhibit D), when the amount of the mortgage money actually disbursed to Plaintiffs or on their behalf was not even a tenth of what the property was worth.  All of the aforementioned representations were made by Defendants contemporaneous with claims and representations that the First International Defendants had large amounts of assets and deposits, were engaged in a legitimate banking and mortgage business as an affiliate of Atlantic Bank, Inc., and that this transaction was a normal banking transaction. The aforesaid actions by Defendants caused Plaintiffs irreparable harm through the potential loss of the property and monetary harm by the loss of the funds that were supposedly obtained via the mortgage in an amount in excess of $75,000.

f.   After misleading Plaintiffs as to the status of the mortgage, (Exhibit D), (i.e., that it was discharged), in August 2010, demanded that Plaintiffs pay off the mortgage or else it would be foreclosed on. A copy of a letter sent to Plaintiffs demanding payment of the mortgage (Exhibit D), are attached hereto as Exhibit J. As a result, Plaintiffs were caused damages in an amount in excess of $75,000.

g.   Utilized the Lawyer's bank account of the Law Offices of Hamood, Runco & Fergestrom, to transfer funds, in violation of 18 USC 1956, to conceal or disguise the nature, source and ownership of the funds derived from Defendants' unlawful activity. (See Exhibit G, a check drawn on the trust account of the Law Offices of Hamood, Runco & Fergestrom, but signed by Defendant Dalaly, who is not an attorney). As a result, Plaintiffs have been damaged in an amount in excess of $75,000. Alternatively, fraudulently representing that the check, Exhibit G, was

15

actually negotiated, when it was not, causing Plaintiffs damages in an amount in excess of $75,000.

h.  Fraudulently induced Plaintiff Avis to sign documents purporting to have her enter into the sale of her home at 465 Haverhill, Bloomfield Hills, Michigan, to First International Exchange Corp., Inc., via a Land Contract, (attached hereto as Exhibit K), on February 18, 2009, for an inadequate amount of consideration, by representing to Plaintiff Avis that the transaction was a normal banking practice used as a way to save Plaintiff Avis's home from foreclosure and that the land contract, Exhibit I, would be treated as a temporary lease of the property from Plaintiff Avis to Defendants. In order to induce Plaintiff Avis to enter into the land contract, contemporaneously with entering into the land contract, Defendants represented to Plaintiff Avis that she could leave her personal property, including all her furniture and personal possessions, at the home, that Plaintiff Avis would have full and unfettered access to the home and her personal property, and that Defendants would only use the home temporarily and sporadically. Defendants also represented to Plaintiff Avis, contemporaneously with entering into the land contract, that Plaintiff Avis would have the option to terminate the land contract at any time and retake possession and ownership of the property in return for reassuming the burden of paying the monthly mortgage payments. All of the aforementioned representations were made by Defendants contemporaneous with claims and representations that the First International Defendants had large amounts of assets and deposits, were engaged in a legitimate banking and mortgage business as an affiliate of Atlantic Bank, Inc., and that this transaction

16

was a normal banking transaction. After allowing Plaintiff Avis full access to the home for a year, Defendants claimed that the property was owned by them pursuant to the land contract, as was Plaintiff Avis's personal property left at the home. As a result, Plaintiff Avis has been damaged in an amount in excess of $2.5 million.

i.  Upon information and belief, entered into a fraudulent mortgage transaction by claiming that Defendants granted a $500,000 credit to a buyer on a home at 4660 Quarton Road, Bloomfield Hills, Michigan, for the purpose of making it appear the buyer had more equity in the home than he actually did and thus making the financing of the home more attractive to banks. The Defendants then sued the buyer of the home, in a lawsuit entitled First International Exchange Group, Inc., v. Erhard Motor Sales, Inc., Case No. 293181 (Oakland Circuit Court). As a result, upon information and belief, the parties to that transaction were damaged in an amount in excess of $10,000.

24. The racketeering activities as described in this complaint amounted to a common course of conduct by which the affiliates of Atlantic Bank Enterprise intended to deceive and harm Plaintiffs and others in order to induce the Plaintiffs and others to engage in banking and financial transactions with Defendants.  Each racketeering activity was related, had similar purposes, involved the same or similar participants and method of commission, and constitutes a continuing threat to the property of Plaintiffs and others who would engage in banking, surety and financial

17

transactions with the enterprise. The Defendants' racketeering activities were part of its ongoing business and constitute a continuing threat to Plaintiff and others who would engage in banking, surety and financial transactions with Defendants.

25. Defendant Dalaly and the First International Defendants designed the affiliates of Atlantic Bank Enterprise to accomplish the common goals of its members as set forth in this complaint

26. The affiliates of Atlantic Bank Enterprise functions as a continuing unit with each member of the enterprise knowing its role and performing its part or role to ensure the continuing success of the Enterprise. Members of the affiliates of Atlantic Bank Enterprise participated together in the fraudulent scheme as described in this complaint.

27. The affiliates of Atlantic Bank Enterprise has been in existence for at least six years and continues in existence to the present.

## Count I – Violation of 18 USC 1963(c)

28. Plaintiffs incorporate by reference all proceeding paragraphs as if fully set forth herein.

29. This Count is brought against all Defendants.

30. Each Defendant is a person within the meaning of 18 USC 1961(3), who conducted the affairs of the affiliates of Atlantic Bank enterprise through a pattern of racketeering activity in violation of RICO, 18 USC 1962(c), in that Defendants intentionally employed a scheme  to defraud Plaintiffs and others by obtaining money and property through means of false and fraudulent pretenses, representations, and promises, and accomplished that scheme by using the mails or wires across state lines or with foreign countries, and by concealing the source and control of funds by the use of the bank account of  the Law Offices of Hamood, Runco & Fergestrom, and upon information and belief, other accounts not in the name of Defendants.

31. The affiliates of Atlantic Bank Enterprise, in the manner described in this Complaint, engaged in and affected interstate commerce.

32. Defendants exerted sufficient control over the affiliates of Atlantic Bank Enterprise so that they were able to direct and conduct the affairs of the Enterprise.

33.  Defendants conducted and participated in the affairs of the affiliates of Atlantic Bank Enterprise through a pattern of racketeering activity that includes acts indictable under 18 USC 1341 (mail fraud), 1343 (wire fraud)  and 1956 (money laundering),  as described in this Complaint.

34. Defendants' use of the U.S. Mail and wires in furtherance of the fraud described in this Complaint involved hundreds of communications, including, but not limited to:

a.    Communications between Defendants themselves and each member of the affiliates of Atlantic Bank Enterprise to establish and maintain the Enterprise.

b.    Communications including receiving financial payments by Defendants from members of the Enterprise for placing loans.

c.    Communications between Defendants, Plaintiffs and others defrauded by the Enterprise in submitting phony letters of credit and surety bonds to the hospitals, Courts, and others while Defendants represented to be legitimate banking organizations and surety companies.

d.    Communications between Defendants and the Register of Deeds for Oakland County for the purpose of filing mortgages and other evidence of title.

e.    Communications from Defendants and the Plaintiffs in making demands for payment on the fraudulently obtained loan documents.

f.    Maintaining of a website entitled www.atlanticbankinc.com for the purpose of holding the Enterprise out to the public as a legitimate banking operation and to fraudulently conceal its illegal behavior.

g.    Mailing checks and depositing checks relating to the monetary transactions entered into.

35. Defendants' use of accounts not in their name for the purpose of concealing the nature, location, source, ownership or control of the proceeds, consisted at least of the use of the lawyer's trust account of Offices of Hamood, Runco & Fergestrom.

36. At all times when Defendants made the aforesaid false representations and communications as part of their scheme to defraud Plaintiff and others, Defendants knew that the representations and communications were false at the time they were made and intended that Plaintiffs and others belief those false statements and rely upon them to their detriment. Plaintiffs and others believed the wrongful communications and representations of the Defendants as aforesaid, as the Defendants intended.

37. As a result of Defendants' aforesaid actions, including the operation of their scheme to defraud Plaintiff and others by violations of the U.S. Code sections stated above, Plaintiffs suffered the following damages:

a. The loss of the future profits in an amount in excess of $10 million resulting from the operation of the hospitals in Pontiac and Detroit that Plaintiff Avis would have purchased, but for the phony letters of credit provided by Defendants.

b. The loss of the value of the real property at 20240 West Twelve Mile Road, Southfield, MI  48076 that Defendants have attempted to have Plaintiffs transfer to Defendants.

c.   The loss of the value of the real estate at 465 Haverhill, Bloomfield Hills, Michigan, resulting from Plaintiff Avis entering into the fraudulently induced "land contract" in February 2009.

d.   The loss of the personal property worth in excess of  $689,264.00, a copy of the inventory of which (less the value of her personal clothing), is attached hereto as Exhibit L, which property Plaintiff Avis has at her home at 465 Haverhill, but which  Defendants have denied her access to.

WHEREFORE, Plaintiffs pray that this Honorable Court enter a judgment in their favor and against the Defendants in an amount in excess of $10,000,000, plus costs interest and attorneys fees.

## Count II – Claim and Delivery

38. Plaintiffs incorporate by reference all proceeding paragraphs as if fully set forth herein.

39. This Count is against all Defendants.

40. Plaintiff Avis is lawfully entitled to possession of the personal property described in Exhibit E attached hereto, as well as her personal clothing left at the property.  The estimated value of the property is $689,264.00, plus the value of Plaintiff Avis's personal clothing in an amount in excess of $10,000.

22

41. The property claimed is composed of independent pieces of property as set forth in Exhibit E, plus Plaintiff Avis's personal clothing.

42. Plaintiff Avis's basis and reason for the claim is that she owns the property and has always owned the property. In February 2009, Defendants induced her to leave the property at her house when she was fraudulently induced to enter into a "land contract" (Exhibit K), as a result of Defendants' fraud, with the Defendants' promise that she would be able to have access to the property at any time and would be able to retrieve the property at any time.

43. Plaintiff Avis has demanded access to the property and has demanded return of the property, but Defendants have refused to comply.

44. Plaintiff Avis requests that the Court order Defendants to return the property immediately.

45. Plaintiff Avis claims damages in the amount of $689,264.00, or whatever amount of damage or loss the Defendants may have caused to the property, including an amount for fair rental value of the property at 1% of the value of the property per month.

WHEREFORE, Plaintiff Avis pays this Honorable Court enter a judgment in her favor for return of the above-described property, or for the value of the property if the property has been lost or damaged, and damages in an amount of the fair rental value of the property for the time that the Defendant has refused to release the property.

23

**Count III – Reformation of Deeds, Land Contract,**

**Mortgage and Assignment of Rents**

46. Plaintiffs incorporate by reference all proceeding paragraphs as if fully set forth herein.

47. This Count is against all Defendants.

**Haverhill Home**

48. Shortly before entering into the land contract with Defendants, (Exhibit K), Plaintiff Avis was facing foreclosure of her house at 465 Haverhill, Bloomfield Hills, Michigan.  At that time, Plaintiff Avis approached Defendants, in what she believed was their capacity as a bank and bankers, and sought a loan to pay her overdue mortgage payments as well as some additional funds to make future mortgage payments, or alternatively a refinance of her then existing mortgage.

49. In response to Plaintiff Avis's request for a loan on the Haverhill home, Defendants, holding themselves out as "private bankers" and "affiliates of the Atlantic Bank, Inc.," convinced Plaintiff Avis to meet with Defendants outside of Michigan.  At that meeting, over a period of two days, Defendants represented to Plaintiff Avis that instead of a normal refinancing, Defendants determined it would be best to rent the home themselves and use it to entertain clients and promote their business.

50. To induce Plaintiff Avis to enter into this "refinancing" scheme for the purpose of saving her home, Defendants further represented to Plaintiff  that Plaintiff Avis could save money by moving into her mother's large house and rent out her house,

24

at 645 Haverhill.  When Plaintiff Avis argued that she could not move all of her furniture and clothing into her mothers' house, as there was not sufficient room, Defendants represented that the problem could be solved by Defendants renting the house from Plaintiff Avis, and allowing her to leave her furniture and whatever clothing she wished at the 645 Haverhill home.

51. Defendants further represented to Plaintiff Avis that Defendants desired to rent the 645 Haverhill home for business purposes and entertaining and did not intend to use it very often.

52.  Defendants then represented to Plaintiff Avis that, under the circumstances, and because Plaintiff Avis had just undergone a divorce,  the best way for this type of refinancing to be handled would be to enter into a land contract between Plaintiff Avis and Defendants, whereby Plaintiff Avis would be permitted to leave all of her personal property in her house, (the personal property, consisting of furniture and personal items, listed on Exhibit L, attached, plus a significant portion of her clothing, all of which having the value of approximately $700,000), while Defendants occupied the house on a temporary basis and paid the mortgage payments. At the same time, Defendants promised to make the mortgage payments for Plaintiff Avis and assured her that she would be able to terminate the land contract at any time and return into possession of the house and recommence to make the mortgage payments.  Defendants represented to Plaintiff Avis that, as a practical matter, the land contract would be in the nature of a month-to-month lease. The Defendants assured Plaintiff Avis that this was a practice that was often and

normally used in lieu of a more typical mortgage loan and/or lease, as Plaintiff Avis would retain legal title to the real property, and would allow Plaintiff Avis to retain all of the financial benefits of ownership of the house as the title remained in her name.

53. Plaintiff initially resisted the Defendant's method of refinancing, but, Defendants kept putting pressure on her and insisted that the land contract be entered into immediately or she would lose her home. Being alone, without the ability to consult advisors, and relying on the aforesaid statements of the Defendants, which appeared reasonable to her at the time, and which were all repeated contemporaneously with the execution of the land contract,  Plaintiff Avis entered into the land contract (Exhibit K),  with Defendants.

54. All of the foregoing statements by the Defendants were false when made, Defendants knew they were false when made and Defendants intended that Plaintiff Avis rely on the false statements to her detriment, as her house was worth at least three time the amount of the purchase price set forth in the land contract (Exhibit K), at the time that the land contract was entered into.

55. Believing Defendants' representations that Defendants were operating as an approved bank, that Defendants were subject to all of the normal rules and regulations of a bank, and being under extreme pressure to securing refinancing of her home, Plaintiff Avis relied on the Defendants aforesaid false statements to her detriment and it was reasonable that she do so.

26

56. As a result of her detrimental reliance, and with Defendants continuing to make the aforesaid statements regarding the land contract being a method of refinancing similar to a lease, all of which statements were made contemporaneously with the execution of the land contract, Plaintiff Avis signed the land contract (Exhibit K), that, on its face, purports to sell her house to Defendants for inadequate consideration, given that Plaintiff's Avis's home at 645 Haverhill, at the time that the land contract was signed was worth over $1.2 million, while the land contract purchase amount was less than $500,000. The legal description of the real property at 645 Haverhill is set forth in the land contract, Exhibit K, and is incorporated herein by reference.

57. For approximately one year, Defendants continued to repeat their statements regarding the property being in the nature of a lease, and allowed Plaintiff Avis full access to her personal property and the house as promised.  Subsequently, however, Defendants started to engage in certain actions that disturbed Plaintiff Avis, such as Defendants making changes to the appearance of the home.

58.  Plaintiff Avis advised Defendants that she objected to the changes to the appearance of the home. Defendants, however, informed Plaintiff Avis that the cost of the changes was negligible and that the Defendants were willing to bear the cost to make the improvements.

59.  Subsequent to making the improvements, however, Defendants locked Plaintiff Avis out of the home and deprived her of her property. Defendants then started to

27

claim that the Plaintiff had sold or gave her personal property to them, including her clothing, and stated that the land contract was valid on its face.

60. Defendants made the aforesaid false statements regarding the meaning of the land contract for the purpose of defrauding Plaintiff Avis out of her home. If Defendants' scheme is allowed to succeed, Plaintiff Avis will suffer irreparable harm, as she will have lost her home, and Defendants will be unjustly enriched.

61. Defendants' statements were part of a scheme to deprive Plaintiff Avis of her Haverhill home and personal property by false pretenses and fraud, and if the land contract (Exhibit K), is not reformed to a lease, it will unjustly enrich the Defendants and Plaintiff Avis will suffer irreparable harm.

62. The fair rental value of the property during the time that the Defendants occupied it was at least the amount of the payments that Defendants made pursuant to the "land contract."

63. In equity and good conscience, the land contract (Exhibit K), between Defendants and Plaintiff Avis should be reformed and considered an equitable lease or be reformed to allow Plaintiff Avis to immediate terminate the land contract, and Defendants should be ordered to vacate the property and allow Plaintiff Avis to resume possession.

**12 Mile Road Property**

64. Plaintiffs were behind in the real property taxes on the 12 Mile Road property in early 2009 and, as a result, approached Defendants, in their self-stated capacity as bankers, for a loan to pay off the overdue real estate taxes.

65. Defendants, acting as a mortgage broker, arranged for a mortgage loan on the 12 Mile Road property to be used to pay off the back real estate taxes, from Kensington Financial, LLC.  Obtaining a mortgage from Kensington financial, LLC, was part of Defendants' scheme to deprive Plaintiff's out of the 12 Mile Road property by false pretenses. The Defendants informed Plaintiffs that in order to obtain the mortgage, it was necessary to transfer the 12 Mile Road property from their living trusts to their own personal names in order for the mortgage to be obtained on the 12 Mile Road property.

66. Statements made by the Defendants regarding the necessity of transferring the property from the Plaintiffs' trusts to their own name was false when made and the Defendants knew the statements were false and intended Plaintiffs to reasonably rely on the false statements for the purpose of completing their scheme to deprive Plaintiffs of the 12 Mile Road property.

67. Pursuant to Defendants' false representations, Plaintiffs signed a deed, Exhibit M, transferring the 12 Mile Road property from their trusts to their own personal names.

68. The deed, Exhibit M, was not necessary, and improperly transferred one half of the 12 Mile Road property from Plaintiff Fosnaugh to Plaintiff Avis, without consideration, without the intent of Fosnaugh to make such a transfer and without the intent of Plaintiff Avis to accept such a transfer without paying consideration. Such a transfer was not intended by the Plaintiffs and was a mutual mistake of fact on their parts induced by the fraudulent representations and actions by the Defendants.

69. Both Plaintiffs ask the court to rescind the deed, Exhibit M, as it was given without consideration and was entered into through a mutual mistake of fact as to its meaning and effect, which mistake was induced by the Defendants, and Plaintiff Fosnaugh would suffer irreparable harm if the deed were allow to stand as is.

70. Plaintiffs were fraudulently induced by Defendants not to make payments on the mortgage they obtained on the 12 Mile Road Property by virtue of Defendants' fraudulent representations that Defendants had paid off the mortgage, that the mortgage was discharged and that Plaintiffs did not have to start making payments on the mortgage until Plaintiffs were in better financial shape.

71. In fact, Defendants never paid off the mortgage on the 12 Mile Road property. Rather, somehow and without Plaintiffs' knowledge, Defendants obtained an assignment of the mortgage from the Sheldon Sandweiss Real Estate Trust, (who had received an assignment of it from Kensington Financial, LLC on the same day the mortgage was executed on May 11, 2009). Exhibit H is a copy of the assignment from the Sheldon Sandweiss Real Estate Trust to Defendants.

72. The statements made by Defendants regarding Defendants paying off the mortgage on the 12 Mile Road property were knowingly false when made by the Defendants at the time they were made, and were intended to be reasonably relied upon by Plaintiffs to their detriment and to the benefit and unjust enrichment of Defendants.

73. It was reasonable for Plaintiffs to rely upon the aforesaid statements by the Defendants regarding the payoff of the 12 Mile Road property mortgage, and they did so reasonably rely to their detriment by not making payments on the mortgage.

74. Defendants did not seek payment on the mortgage on the 12 Mile Road Property for over a year.

75. In furtherance of their scheme to deprive Plaintiffs of the 12 Mile Road property, Plaintiffs were fraudulently induced by Defendants to sign a phony deed transferring one-half of the 12 Mile Road Property to Defendants, through Defendants' false and fraudulent statement that such a deed was necessary for security and would act as a mortgage.   A copy of the deed is attached hereto as Exhibit I. No consideration was given by Defendants for the deed and for that reason, because the deed was improperly executed and because it was fraudulently induced by Defendants, the deed, Exhibit I,  should not be considered valid, and, in order to avoid Defendants being unjustly enriched at the expense of the Plaintiffs, should be rescinded.

76. The statements made by Defendants in regard to the necessity of the deed, Exhibit I, were false when made, known to be false when made, and were intended by

31

Defendants to be relied upon by Plaintiffs to their detriment. It was reasonable for Plaintiff to rely upon the aforesaid untrue statements by Defendant regarding the deed, and Plaintiffs did so reasonably relief to their detriment upon those statements and to the unjust benefit of Defendants.

77. Defendants, in the Fall of 2010, contrary to their aforesaid fraudulent representations, demanded payment of all alleged unpaid amounts of the 12 Mile Road Mortgage.  Attached hereto as Exhibit J is a copy of a letter sent to Plaintiffs demanding payment of the mortgage.

78. Defendants have refused to account for the money that was allegedly paid to Plaintiffs or on their behalf. Not all of the money that is stated to have been paid to Plaintiffs was in fact paid.

79. Plaintiffs would be irreparably harmed if this Court did not grant them equitable relief with respect to the mortgage, Exhibit D, deeds, Exhibits M and I, and the Assignment of Rents, Exhibit E, relating to the  12 Mile Road Property by rescinding the deed to Defendants, Exhibit I for failure of consideration and because it was fraudulently induced, by rescinding the deed from the trusts to Plaintiffs individually because of mutual mistake of fact, lack of consideration and because it was fraudulently induced, reforming or rescinding the mortgage and assignment of rents to confirm to secure the actual amount of money paid out pursuant to the mortgage, less damages incurred by Plaintiffs because of the Defendants' fraud. The Court should take these actions in order to prevent irreparable harm to

Plaintiffs and to prevent the unjust enrichment of Defendants at the expense of Plaintiffs.

80. This Court should reform the mortgage on the 12 mile Road property to provide that payments commence after the completion of this lawsuit.

WHEREFORE, Plaintiff Avis prays that this Honorable Court reform the Haverhill land contract, Exhibit K, to a lease, grant appropriate whatever relief in the Court's discretion should be allowed to give possession of the property to Plaintiff Avis, and award Plaintiff Avis her costs and attorneys fees,

and Plaintiffs further pray that this Honorable Court rescind the two deeds relating to the 12 Mile Road Property, Exhibit I and M, and hold them to be invalid and void, reform the mortgage on the 12 Mile Road property, Exhibit D, and the Assignment of Rents, Exhibit E, to provide for recommencement of payments at the close of this lawsuit, and award Plaintiffs their costs and attorneys fees,

and, Plaintiffs pray this Court grant them any additional and further equitable relief it may deem appropriate.

**Count IV - Violation of the Truth in Lending Act under 15 USC 1535 and 1640**

**For Rescission and Damages**

81. Plaintiffs incorporate by reference all proceeding paragraphs as if fully set forth herein.

82. This count is against all Defendants.

83. Plaintiff Avis is a consumer within the meaning of the Truth in Lending Act.

84. The home at 465 Haverhill was used as the principal dwelling of Plaintiff Avis prior to the extension of credit by Defendants.

85. After entering into the land contract with Defendants, Exhibit K, Plaintiff Avis remained in possession of the home along with her possessions for approximately one year, as she was allowed full access to the home and kept her furniture at the home.

86. Plaintiff Avis was never notified by Defendants of her right to rescind under 15 USC 1635(a) and 12 CFR 226.3(b)(1), nor was she provided by Defendants with the other material disclosures required under the Truth in Lending Act.

87. Plaintiff Avis has suffered damages in an amount in excess of $10,000 resulting from the loss of the use of her personal property and because of Defendants' claims that Defendants hold equitable title under the land contract, Exhibit K.

88. Plaintiff Avis would be irreparably harmed if Defendants were able to enforce their rights as stated in the land contract, Exhibit K.

34

WHEREFORE, Plaintiff Avis prays that this Honorable Court enter a judgment in her favor against Defendants, in an amount in excess of $10,000, and rescind the land contract under the Truth in Lending Act, plus her actual costs and attorneys fees, and award any further equitable relief this Court may deem appropriate.

## Count V – Violation of the Michigan Consumer Protection Act, MCL 445.901

89. Plaintiffs incorporate by reference all proceeding paragraphs as if fully set forth herein.

90. This count is against all Defendants.

91. Defendants' actions as aforesaid constitute Defendants engaging in a sales and marketing program that amounts to an unfair trade practice under MCL 445.903(a), (c), (n), (o), (s), (t), (u), (v), (x), (y), (z), (aa), (bb) and (cc).

92. It would be unfair and against equity and good conscience to allow Defendants to retain possession of the real and personal property of Plaintiff Avis located at 645 Haverhill, as it would unjustly enrich Defendants at the expense of Plaintiff Avis.

93. The actions of Defendants in holding themselves out to be a legitimate bank and claiming that a land contract for an inadequate price is tantamount to a lease,  and their other fraudulent actions as aforesaid in relation to the property at 645 Haverhill, are  unlawful act under the Michigan Consumer Protection Act.

94. Pursuant to MCL 445.911, this Court should issue a declaratory judgment that the land contract (Exhibit K), is not enforceable, but should be reformed to a lease, terminable at will by Plaintiff Avis, order Defendants out of possession of the property, order Defendants to return of Plaintiff Avis's personal property and award damages that Plaintiff Avis has suffered in the amount allowed under pursuant to MCL 445.911.

95. Plaintiff Avis has suffered damages as the result of Defendants' illegal aforesaid actions in an amount in excess of $10,000.

WHEREFORE, Plaintiff Avis prays that this Honorable Court award a judgment against Defendants in favor of Plaintiff Avis in an amount in excess of $10,000, and prays that this Honorable Court issue a declaratory judgment that the land contract (Exhibit K), is not enforceable, but should be considered a lease, terminable at will by Plaintiff Avis her costs and actual attorneys fees, as well as awarding any other and further equitable relief this Honorable Court decides is appropriate.

## Count VI - Fraud

96. Plaintiffs incorporate by reference all proceeding paragraphs as if fully set forth herein.

97. This Count is against all Defendants.

98. As a result of the fraudulent actions by the Defendants as set forth above, Plaintiffs have been damaged in an amount in excess of $10,000.

36

99. It would be unjust and inequitable to allow Defendants to succeed in their scheme to deprive Plaintiffs of their real and personal property at 645 Haverhill and the 12 Mile Road property by false pretenses and fraudulent means.

WHEREFORE, Plaintiffs pray that this Honorable Court rescind the deeds relating to the 12 Mile Road property, Exhibits I and M,  reform the land contract, Exhibit K, to reflect the agreement of the parties that it was to be a lease, and reform the mortgage, Exhibit D, and Assignment of Rents, Exhibit E, relating to the 12 Mile Road property, to reflect the actual amount loaned, have payments recommence at the close of this lawsuit, and award Plaintiffs their damages in an amount in excess of $10,000.

## Count VII – Promissory Estoppel

100.  Plaintiffs incorporate by reference all proceeding paragraphs as if fully set forth   herein.

101.  This Count is against all Defendants.

102.   Defendants made the following promises to Plaintiffs:

    1.    That the land contract, Exhibit K, would be treated as a lease.

    2.    That the mortgage on the 12 Mile Road property would not have to commence payments until Plaintiffs were in better financial shape.

3.      That the deed transferring the 12  Mile Road property in part to
Defendants, if it is valid,  was only to be used as a security.

103.  Plaintiffs relied on those promises of Defendants to their detriment and to the
great benefit of Defendants, and it would be unfair and unjust if Defendants were
not estopped from denying their duties and obligations under their promises as
aforesaid.

WHEREFORE, Plaintiffs pray that this Honorable Court rescind the deeds relating to the
12 Mile Road property, Exhibits I and M, reform the land contract, Exhibit K, to reflect the
agreement of the parties that it be a lease, and reform the mortgage on the 12 Mile Road property
(Exhibit D), and Assignment of Rents, (Exhibit E), to have payments if amounts are owed,
recommence at the close of this lawsuit, and award Plaintiffs their damages in an amount in
excess of $10,000, plus costs, interest and attorneys fees.

Joseph Falcone, P.C.                    January 8, 2011

By   /s/  Joseph Falcone_____
    Joseph Falcone (P25727)
    Attorney for Plaintiffs
    3000 Town Center, Suite 2370
    Southfield, MI 48075
    (248) 357-6610
    jf@lawyer.com

38